UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

KATHY PICKNELL WALDROUP          )
                                 )
V.                               )          NO. 2:13-CV-226
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social Security   )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders

of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff has filed an

application for disability insurance benefits, an application for disabled widow benefits, and

for supplemental security income under the Social Security Act. These applications were

denied following an administrative hearing before an Administrative Law Judge ["ALJ"].

The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 12] while the defendant

Commissioner has filed a Motion for Summary Judgment [Doc. 14].

The sole function of this Court in making this review is to determine whether the

findings of the Commissioner are supported by substantial evidence in the record.

*McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988).

"Substantial evidence" is defined as evidence that a reasonable mind might accept as

adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971).

It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the

conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime*

*Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve

conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d

383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was born October 23, 1960, and thus was 52 years of age at the time of the ALJ's decision on May 14, 2013. She has a high school equivalency diploma. The dispute in this action involves what her past relevant work was and whether there is substantial evidence that she can perform it now.

The plaintiff's medical history is described in the plaintiff's brief as follows:

> The Plaintiff has suffered from low back pain for a number of years. In connection with her prior application, she was evaluated by Dr. Robert A. Blaine in April 2009. He noted that she did not have straight leg pain and her strength was 5/5 bilaterally. Deep tendon reflexes could not be elicited in the upper extremities and knee jerks were 1/4. Ankle jerks could not be elicited in either side. He diagnosed low back pain and right arm pain and opined that she could stand or walk for six to eight hours in an eight hour day and could lift and carry 10 pounds frequently and 25 pounds infrequently. She could sit for eight hours in an eight hour day (TR 300).
>
> The Plaintiff was evaluated at Peninsula for a suicide attempt by overdose on November 9, 2011. She was diagnosed as suffering from an overdose, suicidal ideation and depression on no medication (TR 317).
>
> After that, the Plaintiff came under the care of Cherokee Health Systems for her mental problems. On November 14, 2011, the Plaintiff was diagnosed as suffering from major depression, recurrent, severe, and alcohol abuse. It was noted that her current GAF was 45 and her highest had been 50 and her lowest 40. It was noted that she had depressed mood, a flat affect, slow motor activity and speech, but her memory was impaired and she had poor concentration and her reasoning, impulse, and judgment were poor (TR 328). In December 2011, it was noted that she was still drinking (TR 332). After Christmas, she was drinking less (TR 333).

2

In January, she was still depressed (TR 334). On January 18, 2012, she was diagnosed as suffering from alcohol dependence, depressive disorder, NOS, a personality disorder and she was begun on Celexa (TR 335). On January 24, 2012, it was noted that she was drinking less (TR 336). In April 2012, it was noted that her husband has passed away and she was again diagnosed as suffering from alcohol dependence, and depressive disorder, NOS, a personality disorder and in addition to Celexa, she was begun on Diazepam (TR 341).

The Plaintiff was evaluated by Mr. Arthur W. Stair, III, on June 8, 2012. He diagnosed her as suffering from major depressive disorder, moderate, anxiety disorder NOS, mild, and rule out alcohol dependence as her drinking had been worsening since her husband's death. He opined that her GAF was 50 (TR 352). He opined that the Plaintiff had the ability to understand simple information and to implement multiple-step complex instructions but that her ability to maintain persistence and concentration on tasks for a full work day and work week was at least moderately impaired due to depression and anxiety disorder NOS. Her ability to adapt to change in the work place was at least moderately impaired because of depression and anxiety and her social relationships were moderately impaired (TR 351).

The Plaintiff was evaluated by Dr. David H. McConnell, a family practitioner, in June 2012. He diagnosed the Plaintiff as suffering from chronic low back pain, osteoarthritis of te lumbosacral spine, minimal, chronic right upper arm and shoulder pain, osteoarthritis of the right shoulder, minimal, chronic cigarette abuse, being underweight and depression. He opined that the Plaintiff could occasionally lift and carry up to 40 pounds and could frequently lift 35 pounds, and could stand and walk with normal breaks for a total of at least seven hours in an eight hour work day and could sit with normal breaks for a total of at least eight hours in an eight hour work day (TR 418).

The Plaintiff continued to be followed by the Cherokee Health Systems for her mental problems. In May 2012, she was diagnosed as suffering from recurrent, severe major depression as well as alcohol abuse and her GAF was 45 (TR 456). In June 2012, it was noted that she was having difficulty in sleeping and was using alcohol, and she was diagnosed as suffering from alcohol dependence, depressive disorder, NOS, and personality disorder (TR 459). In September 2012, she reported that she had two panic attacks (TR 528). In February 2013, the Plaintiff reported that she was ver depressed and she had not drunk in two weeks (TR 533). It was noted that she was having longer periods of abstinence from alcohol but she was still described as suffering from recurrent severe major depression and alcohol dependence and her GAF was 45 (TR 534).

[Doc. 13, pgs. 2-5].

In addition to this, there are evaluations of the evidence by various state agency

physicians and psychologists. On May 26, 2009, Dr. James N. Moore, M.D., found Dr. Blaine's medical assessment described above to be "too restrictive." Dr. Moore found plaintiff could frequently lift 25 pounds, occasionally lift 50 pounds, stand or walk for six hours in an eight hour workday and sit for six hours in an eight hour workday. Dr. Moore also found the plaintiff could never balance, and was limited in reaching, stating "overhead reaching bil upper extremities limited to frequent." He found her statements credible to a limited degree. (Tr. 301-09).

On August 4, 2012, following Dr. McConnell's consultative examination, Dr. James Gregory, M.D., a state agency physician, gave a medical assessment of the plaintiff. He opined plaintiff had the same lifting, standing/walking and siting capabilities as described by Dr. Moore above, her only difficulty being limited to occasional climbing of ladders, ropes and scaffolds. He found the plaintiff not credible to the extent claimed. He stated Dr. McConnell's opinion was entitled to "great weight." (Tr. 94-95).

On August 28, 2012, Dr. Brad Williams, a state agency psychiatrist, gave a mental assessment of plaintiff. He found that the plaintiff was moderately limited in certain areas of concentration and persistence. These included the abilities to perform activities within a schedule, maintain regular attendance, being punctual, the ability to work in coordination with or in proximity to others without being distracted by them and the ability to complete a normal workday and workweek. He found her moderately limited in her ability to interact appropriately with the general public and to accept instructions and criticism from supervisors. He also found her to be moderately limited in her ability to respond appropriately to changes in a work setting and to set realistic goals or make plans

4

independently of others. (Tr. 95-97).

The ALJ did not utilize a vocational expert ["VE"] at the administrative hearing.

In his hearing decision, the ALJ found that the plaintiff had severe impairments of depression, anxiety and osteoarthritis which in combination were "an overall 'severe' impairment." (Tr. 20). He found that the plaintiff had moderate limitations in social functioning and concentration, persistence and pace, and a mild restriction in activities of daily living, with no episodes of decompensation. (Tr. 21).

He found that the plaintiff has the residual functional capacity ["RFC'] to perform medium work, except that she could not climb ladders, ropes or scaffolds; that she can frequently perform all other postural activities; that she can frequently reach overhead with both upper extremities; that she can understand, remember, and carry out simple instructions; that she can interact with coworkers, supervisors, and the public on a casual and superficial basis; that she can maintain concentration and persistence for simple tasks; and that she can adapt to changes in the workplace that are infrequent and gradually introduced. (Tr. 22).

The ALJ gave great weight to all of the state agency evaluators. He gave little weight to Dr. Blaine, some weight to Mr. Stair, and some weight to Dr. McConnell. He found that she was capable of returning to her past relevant work as a dietary aide, and thus was not disabled. (Tr. 24).

Plaintiff asserts that the ALJ's decision that the plaintiff could return to her past relevant work was not supported by substantial evidence because of the limitations imposed by her found mental impairments, because all of the examining physicians found she could not perform the lifting requirements of full scale medium work, and because the past relevant

work identified by the ALJ, dietary aide, is not, in fact, the job she performed.

Step four determinations, that a claimant can return to past relevant work, are rarely the subject of judicial appeals because it is rarely the basis that an ALJ uses to find a person to be not disabled. Much more often, the ALJ utilizes a vocational expert, and the claimant is found not disabled at step five, or a significant number of jobs at step five is inserted in the hearing decision as an alternative to a finding that a person can return to past relevant work.

The ALJ did not utilize a VE, but relied upon the Dictionary of Occupational Titles ["DOT"] # 319.677-014, which states that the responsibilities for a dietary aide include:

> Prepares and delivers food trays to hospital patients, performing any combination of following duties on tray line: Reads production orders on color-coded menu cards on trays to determine items to place on tray. Places items, such as eating utensils, napkins, and condiments on trays. Prepares food items, such as sandwiches, salads, soups, and beverages. Places servings in blender to make foods for soft or liquid diets. Apportions and places food servings on plates and trays according to diet list on menu card. Examines filled tray for completeness and places on cart, dumbwaiter, or conveyor belt. Pushes carts to halls or ward kitchen. Serves trays to patients. Collects and stacks dirty dishes on cart and returns cart to kitchen. Washes dishes and cleans work area, tables, cabinets, and ovens. Collects and places garbage and trash in designated containers. May record amount and types of special food items served to patients. May assemble and serve food items to hospital staff in cafeteria.

This DOT descriptions says that such jobs are unskilled and require medium exertion.

20 CRF Ch. III §§ 404.1560(b)(2) and 416.960(b)(2) are the regulations which deal with a step four determination of ability to return to past relevant work. These sections state that the DOT may be utilized, but also states that "a vocational expert or specialist may offer expert testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the

6

demands of the claimant's previous work...."

As Social Security Ruling 82-62, entitled *A Disabilty Claimant's Capacity To Do Past Relevant Work, In General*, explains "[t]he decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and carefully explained in the disability decision. Since this is an important and, in some instances [as here], *a controlling issue* [emphasis added], every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." This Ruling also states "for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety...,in order to determine if the claimant's mental impairment is compatible with the performance of such work."

In the present adjudication, the ALJ simply stated that this job required medium exertion and was unskilled work. Therefore, it was found that the plaintiff could return to it as a past relevant job.

This plaintiff has severe mental impairments at the moderate level in social functioning and concentration, persistence and pace. Also, the two physicians who examined her for the Commissioner found that she could not meet the lifting requirements of a medium work. One of the two non-examining state agency physicians, while opining she could generally meet the 50 pound lifting requirement for medium work, stated she nonetheless had a limitation in overhead reaching.

Had a vocational expert opined that the plaintiff, with the RFC found by the ALJ, could perform the mental and physical requirements of her past relevant work, there would

be no issue.  Likewise, if a vocational expert had identified a significant number of other jobs she could perform with her RFC, there would be no issue.  However, the Court is of the opinion that the ALJ's conclusion without this proof is not supported by substantial evidence on the face of this particular record.

Accordingly, it is respectfully recommended that the case be remanded to the Commissioner for further evaluation of what jobs she can perform with the RFC found by the ALJ.  It is further recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 12] be GRANTED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 14] be DENIED.[1]

Respectfully submitted,

_s/ Dennis H. Inman_____
United States Magistrate Judge

---

[1]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived.  28 U.S.C. 636(b)(1).